IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 05-cv-01817-PSF-CBS

KEITH VOGT,
        Plaintiff,

v.

PEAK PERFORMANCE TECHNOLOGIES, INC.,
LAWRENCE G. SCHEIRMAN,
GERALD LEE SCHEIRMAN,
DOUGLAS ANDERSON,
THOMAS MOORE,
APEX FAMILY MEDICINE, L.L.C., a professional limited liability company,
MIA SCOTT,
STEPHEN MURRAY,
MEDICAL SIMULATION CORPORATION,
DAVE WILSON,
DICK SANDER,
WILLIAM YOUNKES,
COLORADO BAR ASSOCIATION,
JP MORGAN CHASE & CO.,
ARGUS HEALTH SYSTEMS, INC.,
WALGREEN CO.,
BLUE SHIELD OF CALIFORNIA LIFE & HEALTH INSURANCE COMPANY,
BLUE CROSS BLUE SHIELD OF CALIFORNIA,
TOYOTA MOTOR SALES USA INC.,
AUTONATION, INC.,
STEVE LODHOLM,
ADT SECURITY SERVICES, INC., f/d/b/a SECURITYLINK,
STATE OF COLORADO,
CITY AND COUNTY OF DENVER,
MICHAEL JOYCE in his capacity as DENVER CITY ATTORNEY,
INTERNAL REVENUE SERVICE,
KEITH ZOELLNER
QUALITY DENVER, LLC,
PATRICK W. PINSON, and
LEVI TRUJILLO, III,
        Defendants.
_____

ORDER AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

1

_____

Magistrate Judge Craig B. Shaffer

This civil action comes before the court on *pro se* Plaintiff Vogt's Second Amended Complaint ("SAC") (filed February 9, 2006) (doc. # 102). Pursuant to the Order of Reference dated September 30, 2005 (doc. # 4), this civil action was referred to the Magistrate Judge to, *inter alia*, "[h]ear and determine pretrial matters, including discovery and other nondispositive motions" and "[c]onduct hearings, including evidentiary hearings, and submit proposed findings of fact and recommendations for rulings on dispositive motions." The court has reviewed the SAC, the entire case file, and the applicable law and is sufficiently advised in the premises.

I.      Statement of the Case

Plaintiffs Vogt and Sather filed their original Complaint (doc. # 1) on September 20, 2005. Plaintiffs alleged that the "complaint arises from the physical assault, assault by unwanted medication, breach of contract, defective products, redlining, discrimination and harassment by a group of people and organizations (hereafter"SCIENTOLOGY") with similar ethics and beliefs." (Complaint at p. 6). Plaintiffs named approximately 83 Defendants. The Complaint was 115 pages long, contained 94 causes of action, and included approximately 33 pages of attachments plus 6,719 pages of documents (*See* Complaint at p. 72) related to a criminal investigation in Florida.

Between the date the Complaint was filed and December 1, 2005, the court

received approximately nine motions to dismiss and twelve motions for extensions of time to respond to the Complaint. (*See, e.g.,* docs. # 8, # 12, # 14, # 17, # 19, # 22, # 25, # 27, # 32, # 34, # 35, # 36, # 41, # 42, # 50, # 52, # 53, # 54, # 60, # 62, and # 73). On December 5, 2005, the Magistrate Judge held a status conference.  Sather did not appear.  At the status conference, the Magistrate Judge explained to Vogt that the Complaint suffered from many deficiencies.  For example, the Magistrate Judge explained that Vogt's 28th, 29th, 30th, 74th, 85th, 86th, 92nd, and 93rd causes of action alleged violation of criminal statutes that did not state a cognizable claim for relief.  *See Winslow v. Romer*, 759 F. Supp. 670, 673 (D. Colo. 1991) ("Criminal statutes cannot be enforced by civil actions");  *Martinez v. Ensor*, 958 F. Supp. 515, 518 (D. Colo. 1997) ("Generally, private citizens have no authority to institute a federal criminal prosecution");  *Bass Angler Sportsman Society v. United States Steel Corp.*, 324 F. Supp. 412, 415 (S.D. Ala. 1971) (recognizing "the firmly established principle that criminal statutes can only be enforced by the proper authorities of the United States Government and a private party has no right to enforce these sanctions").  The Magistrate Judge further explained that, among other things, Vogt's 63rd and 64th causes of action for medical malpractice required a certificate of review pursuant to Colo. Rev. Stat. § 13-20-602, that Vogt's 10th cause of action entitled "personal jurisdiction" did not constitute a cognizable claim, that Vogt did not appear to have standing to bring his 18th cause of action entitled "genocide: homosexual nation," and that Vogt had not adequately pled the elements of fraud pursuant to Fed. R. Civ. P. 9 in his 25th and 33rd causes of action.  The Complaint did not contain numbered

3

paragraphs and the Defendants named in the caption did not correspond to the Defendants named in the causes of action.  Even after the court's inquiry, Vogt has failed to explain how the 6,719 pages of documents related to a criminal investigation in Florida are germane to this civil action.  Vogt conceded that numerous Defendants had not yet been served and that he no longer sought to sue them.  Vogt requested and the court granted a 45-day extension of time to amend the Complaint.  The court stayed all proceedings pending Vogt's filing of an amended complaint.

Vogt filed an Amended Complaint (doc. # 82) on January 20, 2006.  Sather sought to be and was voluntarily dismissed from the case.  (*See* doc. # 94).  The Amended Complaint named 32 Defendants, was 72 pages long, contained 56 causes of action and 297 numbered paragraphs, and included Exhibits A through H.  Vogt alleged that the action was "brought against a group people and entities (hereafter "Scientology" or "conspiracy") working together to discriminate against homosexual and transgendered people in housing, banking, credit, and healthcare services and concealing the conspiracy within what they allege is a church or religion" and that "the above named Defendants subjected Plaintiff to intensive thought reform and hypnosis (hereafter "Hubbard Tech") in order to make them subject to the control of other Scientology members."  (Amended Complaint at ¶¶ 1, 2).

The Magistrate Judge held a second status conference on January 31, 2006 to discuss the legal deficiencies of the Amended Complaint. Once again, the parties named in the caption did not correspond to the parties named in the causes of action.  (*See, e.g.,* Amended Complaint at p. 5 ¶ g, at p. 8 ¶ 2, at p. 9 ¶ 13, at p. 10 ¶ 18, at p.

4

12 ¶ 55, at p. 13 ¶ 65).   Once again, Vogt alleged violations of criminal statutes that he

has no standing to bring in this civil action.  (*See, e.g.,* Amended Complaint at ¶¶ 133-

149, 189-192, 229-231, 250-257, 267-270).   The Magistrate Judge noted examples of

other significant deficiencies in the Amended Complaint: (1) Vogt's 27th cause of action

pursuant to Colo. Rev. Stat. § 10-16-704 and 705 did not provide a private cause of

action for a civil remedy; (2) Vogt's causes of action for racketeering ("RICO" claims)

cited the wrong statute; (3) Vogt's 13th cause of action improperly named individuals in

a Title VII claim; (4) Vogt did not cite any statutory authority for his 28th or 29th causes

of action; (5) Vogt's 38th cause of action was not an independent claim, merely

incorporating previous paragraphs by reference; (6) Vogt's 44th and 45th causes of

action were conceded to be duplicative of his 28th and 29th causes of action; (7) Vogt's

52nd cause of action for violation of the Sherman Antitrust Act was inadequate to state

a claim; (8) there is no provision in the Federal Rules of Civil Procedure for Vogt to sue

John Doe Defendants 1 through 101; (9) Vogt alleged conduct by several banks, but no

banks were named in the caption as Defendants; and (10) Vogt's four claims against

Defendant Joyce (*see* ¶¶ 208-211, 258-261) were conceded to be redundant.

The Magistrate Judge informed Vogt that the court could not understand

substantial portions of the Amended Complaint and that many of the allegations

amounted to no more than pure speculation.  (*See, e.g.,* Amended Complaint at p. 19

¶¶ 40-43 (referring to "Jeffrey K. Skilling, former President, Chief Executive Officer and

Chief Operating Officer of Enron Corp."); ¶ 122 (alleged defective Toyota auto parts

were designed by "Scientology").  The Magistrate Judge explained to Vogt that he has

obligations under Fed. R. Civ. P. 11 that his pleading not be presented for any improper purpose and that his claims be warranted by existing law and have evidentiary support.

The Magistrate Judge further explained that Vogt would not be afforded unlimited opportunities to amend his complaint.  Vogt requested and was permitted to amend his complaint "one last time."

Vogt filed his SAC on February 9, 2006.  Vogt named 30 Defendants.  The SAC is 69 pages long, contains 51 causes of action and 286 numbered paragraphs, and includes Exhibits A through M.  The SAC and accompanying documents reveal a myriad of allegations "brought against a group people and entities (hereafter "Scientology" or "conspiracy") working together to discriminate against homosexual and transgendered people in housing, banking, credit, and healthcare services and concealing the conspiracy within what they allege is a church or religion" against the Defendants, who "subjected Plaintiff to intensive thought reform and hypnosis (hereafter "Hubbard Tech") in order to make Plaintiff subject to the control of other Scientology members."  (SAC at ¶¶ 1, 2).

The Defendants named in the SAC include but are not limited to Vogt's former employers, supervisors, coworkers, and their relatives (*see, e.g.,* SAC at p. 9 ¶ 7); persons who were involved with installing audio products in and servicing Vogt's personal vehicle (*see, e.g.,* SAC at pp. 33, 35 at ¶ ¶ 124, 131-142); and a pharmacy that failed to fill a prescription for Vogt (*see, e.g.,* SAC at pp. 31, 34 at ¶¶ 109, 128-130).  Vogt alleges that all of the Defendants "are members of Scientology or willfully

enable the actions of Scientology." (SAC at p. 6 ¶ 11). In the SAC, Vogt quotes

extensively from publications by the Church of Scientology. (*See* SAC at pp. 15-18).

Vogt further alleges that Scientology maintains a database to enable discrimination

against him in the following ways:

> a.      Denying access to drugs at pharmacies by providing pharmacists .
> . . with defective legal advice and applying terms and rules differently to
> targeted individuals. . .
>
> c.      Placing defective electronic devices in the automobiles and homes
> of targeted individuals designed to induce migraines and fatigue and
> other mental and physical ailments. . .
>
> e.      Providing a blacklist of targeted individuals to members and non-
> members of Scientology for purposes of discrimination in housing,
> employment, and banking.
>
> f.      theft by deception performed by locksmiths. . .
>
> h.      Merchants applying terms and pricing differently to members of
> Scientology.

(SAC at p. 5).


II.    Pleading Requirements

Vogt's SAC does not conform to the pleading requirements of the Federal Rules

of Civil Procedure.

Fed. R. Civ. P. 8(a) states that a complaint shall contain a "short and plain

statement of the claim showing that the pleader is entitled to relief." This pleading

requirement is intended to "give the defendant fair notice of what the plaintiff's claim is

and the grounds upon which it rests." *Leatherman v. Tarrant County Narcotics*

*Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993).  *See also Blinder &*
*Robinson Co. v. SEC*, 748 F.2d 1415, 1419 (10th Cir. 1984) ("a plaintiff must state a
compensable claim for relief that details the facts forming the basis for the claim").  The
information provided by the pleader must be adequate to set forth the basis of his claim
"as distinguished from a bare averment that he wants relief and is entitled to it."  *See* 5
*Federal Practice and Procedure* Civ. 3d § 1215.

While "the pleading standard set by Rule 8(a)(2) does not change from case to
case, . . . what constitutes sufficient notice to enable a defendant to formulate a
responsive pleading does change from case to case."  *Mountain View Pharmacy v.*
*Abbott Labs.*, 630 F.2d 1383, 1386 (10th Cir. 1980).  "To provide adequate notice, a
complaint in a complex, multi-party suit may require more information than a simple,
single party case."  *Mountain View Pharmacy*, 630 F.2d at 1386-87.

When a complaint does not comply with Rule 8, the district court has the
authority, on its own initiative, to dismiss the complaint.  *Salahuddin v. Cuomo*, 861
F.2d 40, 42 (2d Cir. 1988).  *See also Northington v. Jackson,* 973 F.2d 1518, 1520
(10th Cir. 1992) ("A district court may dismiss *sua sponte* . . . a pro se complaint under
Rule 12(b)(6) for failure to state a claim");  *Pavilonis v. King*, 626 F.2d 1075, 1078 (1st
Cir. 1980) (it was not improper for district court to dismiss complaints *sua sponte*
without waiting for Defendants to file motions to dismiss).  The decision to dismiss an
action without prejudice for failure to comply with Rule 8 is within the sound discretion
of the district court.  *Kuehl v. F.D.I.C.*, 8 F.3d 905, 908 (1st Cir. 1993) (citations
omitted).

8

While *pro se* pleadings should be construed liberally and held to a less stringent standard than formal proceedings drafted by lawyers, *Hall v. Bellmon*, 935 F. 2d 1106, 1110 (10th Cir. 1991) (citations omitted), that standard does not override a *pro se* plaintiff's responsibility to provide a simple and concise statement of his claims and the specific conduct that gives rise to each asserted claim. *See Conley v. Gibson*, 355 U.S. 41, 48 (1957) (*pro se* plaintiff's complaint must be sufficient to give the defendant "fair notice of what the plaintiff's claim is and the grounds upon which it rests"). *See also Ogden v. San Juan County*, 32 F.3d 452, 455 (10th Cir. 1994) (pro se litigant required to follow the rules of federal and appellate procedure); *In re "Santa Barbara Like It Is Today" Copyright Infringement Litigation*, 94 F.R.D. 105, 108 (D. Nev. 1982) ("there is a limit to the indulgence of the law and even a pro se complaint is subject to dismissal if the pleading fails to reasonably inform the adverse party of the basis for the cause of action") (citation omitted).  The court cannot be a *pro se* litigant's advocate. *Hall*, 935 F. 2d at 1110.  A court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged. *Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983).  *See also Whitney v. State of New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (court may not "supply additional factual allegations to round out a plaintiff's complaint");  *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues.").

Vogt's SAC is a rambling narration of discord he has experienced with countless

9

people.  Vogt makes disjointed factual allegations, bizarre accusations, and seemingly unrelated conclusory assertions of legal violations.  Vogt recites statutes and publications that shed no light on the exact nature of his claims.  As support for his SAC, Vogt cites materials such as charts that he has created, receipts for the purchase of car stereo equipment, receipts for car repairs, letters regarding credit card charges, and income tax forms and information.  These references fail to clarify the substance of the SAC or satisfy the pleading requirements set forth in the Federal Rules of Civil Procedure.  *See Green v. Com. of Massachusetts*, 108 F.R.D. 217, 218 (D. Mass. 1985) (finding that dismissal is appropriate for "complaints which ramble, which needlessly speculate, accuse and condemn, and which contain circuitous diatribes far removed from the heart of the claim").

The SAC does not provide sufficient notice to the individual defendants of the factual grounds upon which each of the numerous claims rests.  Vogt fails to identify in the SAC what specific acts constituted violations, or the dates on which alleged violations occurred.  In Vogt's attempt to allege so many claims against so many Defendants, "the needle in the haystack, if any, might as well not be there."  *Jennings v. Emry*, 910 F.2d 1434, 1441 (7th Cir. 1990) (internal quotation marks and citations omitted).  The court is unable to discern a coherent claim or find "a core of proper pleading" buried somewhere in the SAC.  *See Davis v. Ruby Foods, Inc.*, 269 F.3d 818, 820 (7th Cir. 2001) (a complaint need not be dismissed for repetitious and irrelevant matter, if there exists  "a core of proper pleading").  Vogt does not cite adequate authority for his theories, and the court "will not root about in the case law seeking

support for it." *Enplanar, Inc. v. Marsh*, 11 F.3d 1284, 1296 n. 16 (5th Cir. 1994). *Cf.*
*United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir.1991) ("Judges are not like pigs,
hunting for truffles buried in briefs"); *Glenn v. First National Bank in Grand Junction*,
868 F.2d 368, 371 (10th Cir. 1989) (court "will not search through the several
paragraphs of the plaintiffs' 'Introductory Allegations' and attempt to match the factual
assertions with the elements of all subsections of the RICO statute to determine if the
complaint states a claim for relief" . . . or "require the defendants to 'piece' together the
plaintiffs' complaint"); 5 *Federal Practice and Procedure Civ. 3d* § 1281("[u]necessary
prolixity in a pleading places an unjustified burden on the court and the party who must
respond to it because they are forced to select the relevant material from a mass of
verbiage"). The SAC may properly be dismissed for failure to comply with Rule 8(a).


III.     Failure to State a Claim for Relief

         Fed. R. Civ. P. 12(b)(6) states that a court may dismiss a complaint for "failure to
state a claim upon which relief can be granted." When reviewing a Rule 12(b)(6)
motion to dismiss, the court accepts the well-pleaded allegations of the complaint as
true and construes them in the light most favorable to the plaintiff. *Ramirez v. Dep't of*
*Corrections*, 222 F.3d 1238, 1240 (10th Cir. 2000) (citation omitted). A complaint
should not be dismissed under Rule 12(b)(6) "unless it appears beyond doubt that the
plaintiff can prove no set of facts in support of his claim which would entitle him to
relief." *Ramirez*, 222 F.3d at 1240 (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46
(1957)).

11

The court notes many examples of Vogt's claims that fail to state a claim upon which relief may be granted.   Once again, in his First, Second, Third, Fourth, Twenty Second, Forty Second, Forty Seventh, Forty Eighth, and Fifty First Causes of Action, Vogt has alleged violation of criminal statutes that do not state cognizable claims for relief.

To the extent that Vogt bases his Fourteenth through Nineteenth Causes of Action for employment discrimination on his sexual orientation, he fails to state a claim for relief.  *See Williamson v. A.G. Edwards and Sons, Inc.*, 876 F.2d 69, 70 (8th Cir. 1989) ("Title VII does not prohibit discrimination against homosexuals") (citations omitted);  *Polly v. Houston Lighting & Power Co.*, 825 F. Supp. 135, 137 n. 2 (S.D. Tex. 1993) (citations omitted) ("Title VII does not protect homosexuals from harassment or discrimination in workplace, since such treatment arises from their affectional preference rather than their sex");  *Kelley v. Vaughn*, 760 F. Supp. 161, 163 (W.D. Mo.1991) (term "sex" within meaning of statutory prohibition against employment discrimination refers to gender, not sexual orientation) (citation omitted).

Vogt had not adequately pled the elements of fraud in his Tenth Cause of Action.  Fed. R. Civ. P. 9(b) requires that

> [i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.

To meet the Rule 9(b) standard, a plaintiff must identify the circumstances constituting the fraud.  *Broadview Financial, Inc. v. Entech Management Services Corp.*, 859 F. Supp. 444, 449 (D. Colo. 1994) (citation omitted).  Specifically, a plaintiff must (1)

identify the particular individuals with whom he dealt; (2) designate the occasion on which the fraudulent statements were made, and by whom; and (3) describe what misstatements and halftruths were expressed and how. *Id.* The SAC lacks specific allegations regarding the time, place, and content of the alleged fraud.

In his Fifty First Cause of Action, Vogt alleges violation of the Racketeering Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1964(a), against all Defendants. (*See* SAC at ¶¶ 280-86). The RICO statute, 18 U.S.C. §§ 1961-1968, provides for civil and criminal remedies for racketeering activities. "Racketeering activity" encompasses a number of crimes identified in the statute, including mail fraud, wire fraud, and bankruptcy fraud. 18 U.S.C. § 1961(1). "[A] complaint asserting a pattern of racketeering activity must allege facts from which such a continuous and related course of conduct - one indicating the threat of continuing criminal activity - reasonably may be inferred." *Jennings*, 910 F.2d at 1439. Vogt's SAC fails adequately to allege on the part of any of the Defendants a continuous and related course of racketeering activity. Nor has Vogt adequately alleged a racketeering enterprise. An enterprise "is an ongoing 'structure' of persons associated through time, joined in purpose, and organized in a manner amenable to hierchical or consensual decision-making." *Jennings*, 910 F.2d at 1440 (citations omitted).

In his Forty First Cause of Action, Vogt alleges conspiracy against all Defendants. "Under Colorado law, to state a conspiracy claim, the plaintiff must allege the existence of (1) two or more persons, (2) an object to be accomplished, (3) an agreement on the object or course of action, and (4) one or more overt acts and (5)

13

damages as a proximate result thereof.  *Houston v. Mile High Adventist Academy*, 846
F. Supp. 1449, 1457 (D. Colo. 1994) (citation omitted).  Vogt makes insufficient
conclusory allegations of a conspiracy without identifying any specific overt acts or an
agreement between the Defendants.  Vogt has not stated a claim for civil conspiracy.

Vogt fails to allege any basis for standing to bring his Twelfth Cause of Action for
"Failure to Carry Out Legislative Intent," Forty Fourth Cause of Action for "Failure to
Bond," Forty Sixth Cause of Action for "Ninth Amendment" based on Article 25 of the
United Nations Universal Declaration of Human Rights, or Forty Ninth Cause of Action
for "Judicial Review of Liens."  Nor do Vogt's Twelfth Cause of Action,  Eleventh Cause
of Action for "Property," Forty Fourth Cause of Action, Forty Sixth Cause of Action, or
Forty Ninth Cause of Action appear to state a claim for relief.

In his Thirty Seventh and Thirty Eighth Causes of Action, Vogt alleges that two
Defendants violated his First Amendment rights by failing to provide him e-mail
addresses of their employees.  Vogt's Thirty Third and Thirty Fourth Causes of Action
name two parties, MBNA America and MBNA Corporation, who are not named as
Defendants.  These causes of action do not state a proper claim for relief.


IV.    Vogt's Potential Exposure to Sanctions Pursuant to Fed. R. Civ. P. 11

Under Fed. R. Civ. P. 11, upon presentation to the Court of any paper, a *pro se*
litigant is certifying to the best of his or her "knowledge, information, and belief, after an
inquiry reasonable under the circumstances," that

(1) it is not being presented for any improper purpose, such as to harass

14

or to cause unnecessary delay or needless increase in the cost of litigation;
(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
(3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and
(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

Fed.R.Civ.P. 11(b).  "If, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may, . . . impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation."  Fed.R.Civ.P. 11(c).

Although Vogt appears *pro se*, he is not excused from compliance with the rules. *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir.1994) (citations omitted).  Vogt's SAC is evaluated under a standard of objective reasonableness, that is, whether a reasonable attorney admitted to practice before the District Court would file such a document. *Adamson v. Bowen*, 855 F.2d 668, 673 (10th Cir. 1988).  The court must determine whether a reasonable and competent attorney would believe in the merit of an argument.  *White*, 908 F.2d at 680;  *Adamson*, 855 F.2d at 673.  Rule 11 is violated where it is patently clear that a claim has absolutely no chance of success under the existing precedents, and where no reasonable argument can be advanced to extend, modify, or reverse the law as it stands.  *Eastway Construction Corp. v. City of New York*, 762 F.2d 243, 254 (2d Cir. 1985).

The requirements of Rule 11 for *pro se* parties are thoroughly addressed in

15

*Seiverding v. Colorado Bar Ass'n*, 2003 WL 22400218 at *27-28 (D. Colo. Oct. 14, 2003), *aff'd*, 126 Fed. Appx. 457 (10th Cir. April 22, 2005):

> Rule 11 requires parties (or their attorneys, for those who have them) to conduct a reasonable investigation into the facts that they believe will support their claims, and into the laws that they believe will provide them with a legal basis for seeking relief from the court. Parties who file law suits on a pro se basis must comply with the provisions of Rule 11, the same as if they were lawyers. Fed.R.Civ.P. 11; *Business Guides, Inc. v. Chromatic Communications Enter., Inc.*, 498 U.S. 533, 544-45, 111 S.Ct. 922, 112 L.Ed.2d 1140 (1991) (explaining that Rule 11 applies both to parties who are represented by counsel and to pro se parties as well); *Trierweiler v. Croxton & Trench Holding Corp.*, 90 F.3d 1523, 1540 (10th Cir.1996) (same); *Eisenberg v. University of N.M.*, 936 F.2d 1131, 1134 (10th Cir.1991) (same).

> If the court finds that a pro se party has signed a pleading in violation of Rule 11, the court "may . . . impose an appropriate sanction" upon that party. Fed.R.Civ.P. 11(c); *see also Ferguson v. MBank Houston, N.A.*, 808 F.2d 358 (5th Cir. 1986) (approving the imposition of monetary sanctions against a pro se party who filed, for the second time, the same claims against a party); *Miller v. United States*, 868 F.2d 236 (7th Cir. 1988) (approving imposition of monetary sanctions, and approving injunction against further filings, against plaintiff who would not stop filing the same types of claims against the tax laws of the United States); *Goad v. [Rollins]*, 921 F.2d 69 (5th Cir.), *cert. denied*, 500 U.S. 905, 111 S.Ct. 1684, 114 L.Ed.2d 79 (1991) (approving imposition of monetary sanctions, and approving injunction against further filings, for claims that were baseless and frivolous, and returning case to trial court for imposition of additional monetary sanctions); *Daniels v. Stovall*, 660 F. Supp. 301 (S.D. Tex. 1987) (filing of frivolous Complaint warranted payment of attorney fees as a sanction, and trial court entered order that prohibited plaintiff from filing any further cases until she had paid the attorney fees in full).

> Under the provisions of Rule 11, when a party signs a pleading, the signature of that party serves as a certification that the party has conducted a reasonable inquiry into the facts and the law before the pleading was filed. The signature also serves as a certification that the investigation into the facts and law have provided the party with both facts and law that will support the claim that is being made. *Id.* The certification requirement mandates that "all signers consider their behavior in terms of the duty they owe to the court system to conserve its resources and avoid unnecessary proceedings." 5A C. Wright & A. Miller,

*Federal Practice & Procedure* § 1335, ¶ 57-58 (2d ed.1990).

Pro se parties are entitled to have their pleadings reviewed with some measure of liberal deference accorded to their status as pro se parties.  However, this liberal deference "does not confer a license to harass others, clog the judicial machinery with meritless litigation, and abuse already overloaded court dockets."  *In re Winslow*, 132 B.R. 1016, 1019 (Bankr. D. Colo. 1991) (internal citations and quotation marks omitted).

The focus of Rule 11 is narrow.  "It relates to the time of signing of a document and imposes an affirmative duty on each attorney and each party, represented or pro se, to conduct a reasonable inquiry into the validity and accuracy of a document before it is signed."  *Eisenberg v. University of New Mexico*, 936 F.2d at 1134.  Even though pro se litigants may not have the training and resources of an attorney, they nevertheless must comply with Rule 11 and make a reasonable inquiry as to whether a complaint is well-grounded in fact and warranted by existing law.  *See* Fed.R.Civ.P. 11(b); *see also Danvers v. Danvers*, 959 F.2d 601, 604-05 (6th Cir. 1992).

The Tenth Circuit has adopted the view that "an attorney's actions must be objectively reasonable in order to avoid Rule 11 sanctions."  *White v. General Motors Corp., Inc.*, 908 F.2d 675, 680 (10th Cir. 1990).  By extension, the actions of pro se parties are required to be "objectively reasonable" as well.

A good faith belief in the merit of an argument is not sufficient; the attorney's [or the party's] belief must also be in accord with what a reasonable, competent attorney would believe under the circumstances.  *Id.*

The standard is one of reasonableness under the circumstances.  Under this standard, the court must determine what a reasonable person in the pro se litigant's position would have done. "[S]ubjective good faith--that is, a pure heart but empty head--is no defense."  *OTR Drivers at Topeka Frito-Lay, Inc. v. FritoLay, Inc.*, 160 F.R.D. 146, 149 (D. Kan. 1995) (internal quotation marks omitted).

(Copy attached to this Recommendation).

No reasonable person in Vogt's position would assert these fifty one claims in a Second Amended Complaint, especially after being twice expressly warned by the court that his claims had numerous obvious deficiencies.  Rule 11 sanctions may be appropriate should Vogt pursue his claims further in their present state.

17

V.      Conclusion

The SAC in its present form is inadequate to warrant a determination on the merits of any of the claims that may or may not be asserted therein.  The SAC is Vogt's third attempt to comply with the rules of this court.  Even after numerous Defendants filed motions to dismiss, Vogt was afforded an opportunity to further amend, to meet the objections to the adequacy of the Complaint and the First Amended Complaint.  Vogt was expressly and repeatedly warned of the many deficiencies in his claims.

Under the circumstances of this case, it would be appropriate for the court to recommend dismissal of the SAC on the merits and with prejudice.  Even *pro se* parties are not permitted an infinite number of attempts to comply with the rules of the court. Moreover, Defendants have offered many substantive reasons why the SAC should be dismissed on the merits.  Notwithstanding, the court recommends that the SAC be dismissed without prejudice.  The court does not make the assumption that Vogt will again serve a complaint that is not warranted, since he is bound by the duties of Fed. R. Civ. P. 11 and is subject to the sanctions of that Rule should he violate it.  This Recommendation is without prejudice to Defendants' right to seek dismissal with prejudice in the event of an appeal to the District Judge.

Accordingly, IT IS RECOMMENDED that this civil action be dismissed without prejudice.

Further, IT IS ORDERED that Defendants are hereby relieved of their obligation to answer or otherwise respond to the Second Amended Complaint until 20 days after final disposition of this Recommendation by the District Judge.

18

**Advisement to the Parties**

Within ten days after service of a copy of the Recommendation, any party may

serve and file written objections to the magistrate judge's proposed findings and

recommendations with the Clerk of the United States District Court for the District of

Colorado.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b);  *In re Griego*, 64 F.3d 580, 583

(10th Cir. 1995).

The district judge shall make a *de novo* determination of those specific portions

of the proposed findings or recommendations to which specific objection is made.  28

U.S.C. § 636(b)(1).  A general objection that does not put the district court on notice of

the basis for the objection will not preserve the objection for *de novo* review.  *See In re*

*Griego*, 64 F.3d at 583;  *United States v. One Parcel of Real Property Known As 2121*

*East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996).  The district

judge may accept, reject, or modify, in whole or in part, the findings or

recommendations made by the magistrate judge.  28 U.S.C. § 636(b)(1).

"[A] party's objections to the magistrate judge's report and recommendation must

be both timely and specific to preserve an issue for de novo review by the district court

or for appellate review."  *One Parcel of Real Property*, 73 F.3d at 1060.  Failure to

make timely objections may bar *de novo* review by the district judge of the magistrate

judge's proposed findings and recommendations and will result in a waiver of the right

to appeal from a judgment of the district court based on the proposed findings and

recommendations of the magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579-80

(10th Cir. 1999) (district court's decision to review a magistrate's recommendation *de*

*novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *One Parcel of Real Property*, 73 F.3d at 1059-60 (a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review); *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the magistrate's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the magistrate's ruling). *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

DATED at Denver, Colorado, this 2nd day of March, 2006.

BY THE COURT:

*s/Craig B. Shaffer*
United States Magistrate Judge